550 P.2d 243

**In the Matter of the ESTATE of Francis M. SCHMITZ, Deceased.**

**Thomas E. SCHMITZ, Guardian of the person and Estate of Nancy Anne Schmitz, an incapacitated person, Appellant,**

**v.**

**The VALLEY NATIONAL BANK of Arizona, as Personal Representative of the Estate of Francis M. Schmitz, and Carl Fredman, Trust Officer, and the Arizona Department of Economic Security, Appellees.**

**No. 2 CA–CIV 2082.**

Court of Appeals of Arizona, Division 2.

June 8, 1976.

Amelia D. Lewis, Sun City, for appellant.

Bruce E. Babbitt, Atty. Gen. by Harold J. Merkow, Asst. Atty. Gen., Phoenix, for appellee Arizona Dept. of Economic Security.

HOWARD, Chief Judge.

This is an appeal from a declaratory judgment which ordered appellant to pay the Department of Economic Security the sum of $175 per month for the support of his mentally retarded ward. Pursuant to Rule 76, Rules of Civil Procedure, the parties have submitted to us a statement of the case.

The decedent, Thomas E. Schmitz, is survived by a mentally retarded daughter, Nancy Anne, and three other children. His will provides, in part:

"*THIRD*: I give . . . all my estate, . . . to the VALLEY NATIONAL BANK OF ARIZONA, . . . IN TRUST, NEVERTHELESS for the following uses and purposes:

(a) The Trustee shall use the corpus for the benefit of NANCY ANNE SCHMITZ, and shall use and apply so much of the income and/or principal of the Trust Estate as it shall deem advisable and necessary to provide for the care, comfort, support, welfare, and other expenses of said child. This shall be a full discharge to the Trustee with respect thereto. That if in any given year the needs of NANCY ANNE SCHMITZ, do not consume the available income for that year, the excess income shall be divided among the remaining three children, namely DONALD F. SCHMITZ, THOMAS E. SCHMITZ, and BARBARA WAY.

(b) This Trust shall exist for the lifetime of NANCY ANNE SCHMITZ. Upon her death the Trust shall cease and terminate and the remaining corpus shall be divided equally among DONALD F. SCHMITZ, THOMAS E. SCHMITZ, and BARBARA WAY."

The value of the estate left in trust by decedent is approximately $230,000.

Subsequent to the admission of the will to probate Nancy was admitted to the Arizona Training Program at Coolidge, Arizona. Pursuant to A.R.S. Secs. 36–561 and 36–562, the Director of the Arizona Department of Economic Security ordered the trustee to pay to the Department of Economic Security for Nancy's support the annual sum of $2,100 which is the maximum charge allowed under A.R.S. Sec. 36–562. It is appellant's position that because of the terms of the testamentary trust there should be no liability for support, or at the most, the liability should be based upon the income of the trust less trustee's fees and attorney's fees.

The Arizona Department of Economic Security contends the intent of the testator should govern; the decedent intended the trustees to pay any amount necessary for Nancy's support and the trial court was correct in ordering payment of the maximum amount allowable under the statute.

The Arizona statutes are clear as to determining and computing liability. A.R.S. Sec. 36–561(B) in pertinent part provides:

"* * * The amount payable by the mentally retarded person, his estate, par-

ent, or guardian, for residential care shall be fixed by the director in accordance with the fees prescribed in § 36–562. The county in which the mentally retarded person resides shall pay that portion of the actual cost of care and maintenance at a center over and above the amount ordered paid by the mentally retarded person, his estate, parent, or guardian, provided that in no event shall the total obligation of the county exceed one hundred seventy-five dollars each month for such person."

A.R.S. Sec. 36–562 provides:

"C. The amount of annual liability of a mentally retarded person, his estate, parent, or guardian of the estate for residential care shall be based on the percentage of gross income of the mentally retarded person, his estate, parent or guardian, as defined by § 43–112(a), . . .."

The remainder of A.R.S. Sec. 36–562(C) contains a computation table based upon gross income with a liability limitation of $2,100 annually.

Gross income is defined under A.R.S. Sec. 43–112(a) as follows:

"Gross income includes any amount received or accrued, directly or indirectly, by an individual as . . . gains, profits, and income derived from salaries, wages, or compensation for personal service, . . . of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever, including interest which now or hereafter constitutionally may be taxed."

The Department admits that the trial court's order is not based upon the statute which clearly and unequivocally uses gross income as a measure of liability. The cases relied upon by the Department are not in point in that they do not involve a statute such as ours which bases the amount due to the Department upon a percentage of gross income.

■ The ward in this case, has "gross income" only when payments are made by the trust to her or on her behalf for her support and maintenance.[1] The record does not disclose that any such payments have been made. Under the schedule set forth in A.R.S. Sec. 36–562, in order to accrue a liability of $2,100 the ward would have to receive gross income from the trust for her support and maintenance in excess of $22,000. But, argues the Department, the trustee can be required to expend such sums as are reasonably necessary for her support and maintenance. We agree. This being a trust for support, the interest of the beneficiary can be reached in satisfaction of a claim against the beneficiary for necessary services rendered to the beneficiary. Restatement of Trusts 2d, Sec. 157. But the Department is still bound by the statute which bases liability on *gross income*.

■ What is the ward's "gross income"? We hold that under the facts of this case it would include all sums necessary for her care, support, comfort, welfare and other expenses. What amount is necessary for these purposes? Is it $2,100, the maximum amount payable under the statute? If so, the trustee would not be liable for any payments since one must receive $5,000 before any payments are due to the Department. We believe, however, that the definition of "gross income" here should not be so limited. Rather, it should be determined what amount would be necessary to provide for Nancy's care, support, comfort, welfare and other expenses outside of the institution, taking into consideration such sums to be received from social security payments.

---

1. The ward has no other source of income other than social security payments.

The amount which creditors can reach under the Restatement would be the amount of "gross income" she is entitled to receive from the trust for the purpose of arriving at the trustee's liability pursuant to the schedule set forth in A.R.S. Sec. 36–562.

Appellant is going to receive social security payments in the approximate sum of $1,200 a year for the support and maintenance of his ward. He claims these amounts should not be paid to the Department because of Revenue Ruling 70–217 which states that such benefits are not includible in the gross income of the recipient.

The Department does not meet this argument "head-on" but chooses to rely on its position that gross income is not the test in this case. It does, however, refer to C.F.R. 20, Sec. 404.1606 which states:

> "Where a beneficiary is confined in a Federal, State or private institution because of mental or physical incapacity, the relative or other person to whom payments are certified on behalf of the beneficiary shall give highest priority to expenditure of the payments for the current maintenance needs of the beneficiary, including the customary charges made by the institution . . .."

Both parties have treated this issue in a perfunctory manner without any appreciable analysis of the problem. The Revenue Ruling applies to *federal* tax returns and not state returns. The definition of gross income set forth in A.R.S. Sec. 43–112(a) would include these payments as gross income unless constitutionally the payments could not be taxed. Appellant has failed to point out to us a constitutional provision which prohibits the State of Arizona from taxing these payments.

We find that the following questions have not been answered by the parties: (1) Is there a constitutional provision prohibiting taxation of the social security benefits? (2) Does C.F.R. 20, Sec. 404.1606 mandate the guardian to pay the social security benefits to the Department? (3) If so, does the regulation create an obligation separate and apart from A.R.S. Sec. 36–562 which does not depend upon the term "gross income" and is limited only by the maximum amount the Department can charge?

■ This entire issue has been so perfunctorily treated by both parties that we see no reason to do their legal research for them. The declaratory relief sought in this case was the liability of the *trust* for payments. There is no judgment declaring the guardian liable to the Department for the amount of the social security payment. We have considered the social security payments only for the purpose of determining the amount necessary for support and maintenance of the ward, and not because they may be payable to the Department.

The judgment is vacated and remanded for further proceedings consistent with this opinion.

KRUCKER and HATHAWAY, JJ., concur.